SO ORDERED: August 16, 2013.



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

| | |
|---|---|
| AARON MUIR ) | |
| STEPHANIE MUIR ) | |
| ) | CASE NO. 12-4065-RLM-7 |
| Debtors ) | |

| | |
|---|---|
| AARON and STEPHANIE MUIR ) | |
| ) | |
| Plaintiffs ) | Adversary Proceeding |
| vs. ) | No. 13-50136 |
| ) | |
| MATTHEW MCWILLIAMS and ) | |
| TARA MCWILLIAMS ) | |
| ) | |
| Defendants ) | |

**ORDER DENYING PLAINTIFFS' EMERGENCY MOTION
TO ORDER STAY OF PROCEEDINGS**

This matter came before the Court on July 17, 2013 for hearing on the

*Emergency Motion to Order Stay of Proceedings Against Matthew and Tara*

1

*McWilliams,* filed by the Plaintiffs. This order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

### *Facts*

Matthew and Tara McWilliams, the Defendants, ("Creditors") entered into an agreement to buy residential property from the Plaintiffs, Aaron and Stephanie Muir (the "Debtors") on or about August 9, 2011. Sale of the property was a "short sale" that closed around September 15, 2011. Soon after the Creditors moved in, they noticed mold in the basement and later learned that the property had sustained water damage in January or February, 2011, less than a year before they purchased it. They have incurred remediation costs. The Creditors retained counsel who contacted the Debtors by letter dated April 8, 2013 in an attempt to resolve the matter short of litigation.

Unbeknownst to the Creditors, the Debtors filed a chapter 7 bankruptcy petition a year earlier on April 10, 2012. Debtors did not list the Creditors on Schedule F. The deadline to file complaints to determine dischargeability was July 16, 2012. The case was declared a "no asset" case and the debtors received a discharge on July 17, 2012. The case was closed shortly thereafter.

The Debtors do not dispute that they did not list Creditors' claim on their schedules. Nothing in the record contradicts the Creditors' assertion that they had neither notice nor actual knowledge of the Debtors' bankruptcy case on or before July 16, 2012. Creditors have made no allegation the Debtors were aware of a claim by Creditors at the time of the filing of their bankruptcy petition.

The Creditors sued the Debtors, the Debtors' real estate agent, the agent's real estate company, and the Debtors' inspection company in the Allen County Superior

2

Court (the "State Court") on May 10, 2013. The Creditors seek damages against the Debtors under Ind. Code §35-43-5-3 and §35-43-5-4 for their alleged false and misleading written statements contained in the "Seller's Residential Real Estate Disclosure" form.

The Debtors reopened their bankruptcy case on June 7, 2013 wherein they filed an amended Schedule F listing the Creditors as holding a contingent, disputed and unliquidated claim in an "unknown" amount. The Debtors contend that any debt owed to the Creditors has been discharged and have filed this adversary proceeding seeking damages for the violation of the discharge injunction. They have asked this Court to stay the State Court proceedings, or, in the alternative, seek an order directing the Creditors to file a nondischargeability action in this court.

### *Discussion*

Debtors are required to identify and list on Schedule F all creditors holding unsecured, nonpriority claims. 11 U.S.C. §521(a)(1)(A); Fed. R. Bankr. P. 1007(a)(1); *In re Smith*, 582 F3d. 767, 770 (7th Cir. 2009). Despite this requirement, §523(a)(3) provides that claims of unscheduled creditors nonetheless are discharged *unless* (A) the bankruptcy case is an "asset" case and the unscheduled creditor did not learn of the bankruptcy before the deadline to file a proof of claim or (B) the unscheduled creditor holds a claim against the debtor for the intentional torts under §523(a)(2) [1], (4)[2] or (6)[3]

---

[1] Section 523(a)(2)(A) and (B) provide that a debt for money, property, services or an extension or renewal of credit is nondischargeable to the extent it was obtained by (A) false pretenses, a false representation, or actual fraud (B) a materially false financial statement or (C) extensions of debt for luxury goods or cash advances within a certain amount of time before the bankruptcy filing.

[2] Section 523(a)(4) provides that a debt is excepted from discharge if the debt if for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

[3] Section 523(a)(6) provides that a debt is excepted from discharge if the debt is for willful and malicious injury by the debtor to another entity or to the property of another entity.

3

and the unscheduled creditor did not learn of the bankruptcy before the deadline to file a nondischargeability complaint.

The Debtors' chapter 7 case was a "no asset" case, meaning that there were no assets for the chapter 7 trustee to administer and hence no funds to distribute to creditors. Since the creditors would receive no distribution, there was no need for the Court to establish a deadline by which to file claims. Since there was no claims bar date, the Creditors were not prejudiced by the Debtors' failure to list them on their schedules. Thus, to the extent the Creditors' claim fits under §523(a)(3)(A), it has been discharged. See, *In re Guseck*, 310 B.R. 400, 403 (Bankr. E. D .Wis. 2004) (holding that, in a "no asset, no-bar-date" bankruptcy case, there is no need for a debtor to reopen the case to amend the schedule to add omitted garden variety debts, as such debts were included in the discharge under §727).

Rather, the Creditors hold an alleged intentional tort claim against the Debtors and the Debtors' failure to schedule it falls under §523(a)(3)(B). A scheduled creditor holding an intentional tort nondischargeability claim must file a complaint within sixty (60) days of the date first set for the first meeting of creditors or the right to file such an action is lost. Section 523(a)(3)(B) was drafted, in part, to prevent "crafty" debtors who defraud creditors from conveniently omitting the debt from the schedules until after the expiration of the nondischargeability complaint by making such omitted debts nondischargeable. *Id. at* 404. However, a creditor's right to bring a timely nondischargeability action is such an important right that application of §523(a)(3)(B) is not limited to where the omission from the schedules is intentional but includes inadvertent omissions. *Smith*, 582 F.3d at 777 ("[a]ll that need be shown to establish a

4

right to relief under Section 523(a)(3)(B) is that the debt in question was unscheduled and the creditor did not have notice or actual knowledge of the bankruptcy in time to file a claim and request for a determination that the debt was nondischargeable").

Under §523(a)(3)(B), a debtor's failure to schedule intentional tort creditors, whether by design or by accident, removes both the deadline in which to file intentional tort nondischargeability actions as well as the bankruptcy court's exclusive jurisdiction to hear them. *Guseck*, 310 B.R. at 404. This results in three litigation options:

> [p]arties that continue to have a dispute concerning dischargeability of debts after a bankruptcy case is administered have three options for how to litigate. That litigation could occur in different courts depending on the option chosen. First, if a creditor sues on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, either the debtor or the creditor can bring an action in the bankruptcy court to determine dischargeability. Third, the debtor can bring an action in the bankruptcy court to enforce the discharge injunction against the creditor attempting to collect discharged claims.

*In re Gustin*, 343 B.R. 909, 913 (Bankr. W.D. Wis. 2005), citing *In re Mendiola*, 99 B.R. 864, 870 (Bankr. N. D. Ill. 1989).

Here, both parties have acted; the Creditors have chosen the first option and the Debtors have chosen the third option. The Debtors argue that the State Court litigation should be stayed and that the dispute should be litigated in this Court because their omission of the claim from their schedules was by accident, and they, in fact, were not aware that the Creditors even held a claim against them until they received the April 8th letter from Creditors' counsel. As previously noted, §523(a)(3)(B) applies even in cases where the omission from the schedules was inadvertent and does not figure into what option the parties choose. The Debtors' intent in not scheduling the Creditors' claim is relevant only in determining the level of proof by which the Creditors must prove their

5

intentional tort claim after §523(a)(3)(B) is applied.  See, *In re Paylan*, 390 B.R. 432, 437-38 (Bankr. M. D. Fla. 2008)(holding that, after the threshold issue of whether the creditor received notice or had actual knowledge of the bankruptcy is resolved, the next inquiry is whether the omission was due to "fraud or intentional design"; if it was, the debt is nondischargeable under §523(a)(3)(B) regardless of whether the creditor would have prevailed in an action under §523(a)(2), (4) or (6); if it is not, then the Court must conduct further proceedings to determine whether the debt is dischargeable under §523(a)(2), (4) or (6)).  Although the Debtors' omission here appears to have been inadvertent, that omission nonetheless gave the Creditor the option of proceeding in State Court and the Court will not deprive the Creditors of exercising that option. Furthermore, there is no reason to do so since the State Court has concurrent jurisdiction to determine the dischargeability of the Creditors' claim. *Eden v Chapski, Ltd*, 405 F.3d 582, 586 (7th Cir. 2005); *Gustin*, 343 B.R. at 913 (holding that state court has concurrent jurisdiction with the bankruptcy court and a final decision by either court precludes relitigation in the other); *Mendiola*, 99 B.R. at 868, fn 6; (concluding that the exclusive bankruptcy jurisdiction provisions of §523(c) expressly do not apply to §523(a)(3)(B)).

The Court notes that, as of this point, the Creditors in their State Court lawsuit do not ask for a determination of nondischargeability under §523(a)(2), (4) or (6), but rather seek damages related to the Debtors' alleged false and misleading written statements contained in the "Seller's Residential Real Estate Disclosure" form.  The Court surmises that the issue of nondischargeability will be put before the State Court either by the Creditors amending their complaint or by the Debtors asserting the

6

bankruptcy discharge as an affirmative defense in the State Court action. If for some reason the State Court is not called upon to determine the issue of dischargeability or the State Court chooses to defer that question to this Court, either party is free to bring a declaratory judgment action regarding dischargeability in this Court. *Guseck*, 310 B.R. at 405.

     The Debtors' failure to include the Creditors in their schedules appears to have been inadvertent. However, the Creditors did not get notice of the Debtors' bankruptcy case and did not have actual knowledge of it in time to file a complaint to determine dischargeability under §523(a)(2), (4) or (6). They hold a colorable §523(a)(2)(A) nondischargeability claim against the Debtors. Section 523(a)(3)(B) allows them to litigate the issue of nondischargeability either in this Court or State Court. They have chosen State Court. The Debtors' motion to stay the State Court proceedings is therefore DENIED.

# # #

Distribution:
Julie A. Camden, Attorney for the Plaintiffs, Aaron and Stephanie Muir
Wesley N. Steury, Attorney for the Defendants, Matthew and Tara McWiliams

Case 13-50136    Doc 12    Filed 08/16/13    EOD 08/16/13 17:37:34    Pg 8 of 8